21-6295
Dong v. Garland

BIA
A098 713 548

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-three.

PRESENT:
            JOHN M. WALKER, JR.,
            RAYMOND J. LOHIER, JR.,
            MYRNA PÉREZ,
                        *Circuit Judges.*

_____

MEI DONG,
            *Petitioner*,

            **v.**                                    **21-6295**
                                                      **NAC**

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,
            *Respondent.*

_____

FOR PETITIONER:            Gang Zhou, New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Nancy E. Friedman, Assistant Director; Robert D. Tennyson, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Mei Dong, a native and citizen of the People's Republic of China, seeks review of a May 10, 2021 decision of the BIA, which denied her motion to reopen. *In re Mei Dong,* No. A098 713 548 (B.I.A. May 10, 2021). We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision.

In her motion to reopen, which was filed in April 2020, Dong asserted that conditions in China had worsened for Christians and family members of activists for the China Democracy Party ("CDP"), and that these changes excused the untimely filing of her motion and demonstrated her prima facie eligibility for asylum based on her practice of Christianity and her husband's membership in the CDP in the United States. *See* 8 U.S.C. § 1229a(c)(7)(C)(i)–(ii) (setting 90-day deadline for motion to reopen, unless reopening is sought to apply for asylum and the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been

2

discovered or presented at the previous proceeding"); 8 C.F.R. § 1003.2(c)(2)–(3) (same). In support of her motion to reopen, Dong attached nearly one-hundred pages of evidence regarding China's recent campaign to "sinicize" religion and to suppress political dissidents since President Xi Jinping's rise to power, as well as evidence regarding Dong's 2012 conversion to Christianity and Chinese officials' determination that Dong and her husband could not inherit property on account of her husband's membership in the CDP. The Government did not oppose Dong's motion to reopen.

In May 2021, the BIA denied Dong's motion to reopen as untimely, finding that Dong failed to show changed conditions in China excusing the 90-day filing deadline for reopening. While the BIA acknowledged that Dong had "submitted evidence indicating persistent government restrictions on Christian religious practices in China," the BIA concluded that Dong had not established "that this evidence shows a marked increase in the mistreatment of Christians, such that there are changed country conditions in China." *In re Mei Dong*, A098 713 548, at 2 (B.I.A. May 10, 2021) (citing Pet. Mot., Ex. B(f), (h), at 117–18, 137–44). Instead, the BIA found that Dong's 2012 conversion to Christianity constituted a change in her personal circumstances that did not excuse her untimely filing. As for Dong's husband's membership in the CDP, the BIA acknowledged that Dong had "submitted evidence indicating that China has consistently targeted political dissidents and their families," but concluded that Dong had not shown "significantly worsening conditions" for returning spouses of CDP members. *Id.* at 5 (citing Pet. Mot.,

3

Ex. B(c)–(d), at 64–73). The BIA further found that Chinese officials' determination that Dong and her husband could not inherit property on account of her husband's membership in the CDP merely constituted changed personal circumstances. Alternatively, the BIA denied Dong's motion to reopen because she failed to establish her prima facie eligibility for asylum, withholding of removal, or relief under the Convention Against Torture ("CAT").

In June 2021, Dong filed the instant petition for review. In her petition, Dong principally argues that the BIA disregarded the evidence of materially worsening conditions in China, noting, for example, that the BIA's analysis of Dong's evidence regarding the treatment of Christians in China consisted of a single sentence. Dong also argued that the BIA erred in concluding, in summary fashion, that she had not established her prima facie eligibility for asylum, withholding of removal, or CAT relief. In its response brief, the Government acknowledges that the BIA "did not specifically discuss the evidence she presented in support of her motion, instead providing general characterizations of that evidence and references to parts of the record." Resp. Br. at 2. The Government maintains, however, that "remand is not strictly necessary" because Dong did not present any evidence from 2006 (the time of her initial hearing) that would permit the BIA "to compare country conditions" between now and her 2006 hearing. *Id.*

We review the BIA's denial of a motion to reopen for abuse of discretion and any findings regarding changed country conditions for substantial evidence. *See Jian Hui*

4

*Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008). "An abuse of discretion may be found in those circumstances where the [BIA]'s decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Ke Zhen Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 93 (2d Cir. 2001) (citations omitted). "While the BIA need not expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner, it still must address a petitioner's primary evidence, particularly when that evidence is credible and points toward a conclusion contrary to that reached by the BIA." *Tanusantoso v. Barr*, 962 F.3d 694, 699 (2d Cir. 2020) (quotation marks and citation omitted).

Here, we conclude that the BIA abused its discretion in denying Dong's motion to reopen without sufficiently evaluating Dong's evidence regarding changed country conditions. As noted above, Dong submitted nearly one-hundred pages of evidence regarding changed conditions in China. For example, Dong submitted the following evidence regarding the persecution of Christians in China: (1) a 2019 report by the United States Commission on International Religious Freedom discussing the Chinese Communist Party's increasing hostility toward religion — including Protestant Christians — after certain revisions to the Regulations on Religious Affairs took effect in February 2018, which "effectively banned 'unauthorized' religious teachings and required religious groups to report any online activity" (Pet. Mot., Ex. B(g), at 124, 126,

5

128–29); (2) a 2019 report by the Congressional-Executive Commission on China discussing President Xi's recent campaign to "sinicize" religion, as reflected by the regulatory changes discussed above, leading to a nearly eight-fold increase in instances of official persecution of Chinese Protestants from 1,265 in 2017 to 10,000 in 2018, and which some observers have characterized as the worst escalation of religious persecution in China since the Cultural Revolution (Pet. Mot., Ex. B(h), at 134, 140–42); and (3) a 2018 report from the Chinese Human Rights Defenders discussing the Chinese government's ban on Bible sales online, demolition of church buildings, and disruption of religious practices in many Christian communities (Pet. Mot., Ex. B(f), at 117); *see also id.*, Ex. B(i), at 147–48 (recounting that some provincial officials removed all Christian symbols from buildings, restricted children from entering churches, and banned the teaching of hymns to children at home). As for evidence of China's suppression of political dissidents, Dong submitted, *inter alia*: (1) a 2018 article discussing increasing arrests and disappearances of critics of the Chinse government (Pet. Mot., Ex. B(d), at 67–83); and (2) a 2018 report from the Chinese Human Rights Defenders, discussed above, which claims that, "[u]nder [President Xi's rule], China's authoritarian one-party political system has become the most draconian and invasive since the 1980s" (Pet. Mot., Ex. B(f), at 108).

As the Government acknowledges, the BIA failed to meaningfully evaluate such evidence, and merely referenced a few pages of the evidence, after which it concluded that Dong had not shown materially worsening conditions in China. *See* Resp. Br. at 10

("[T]he Board did not closely parse the record or specifically discuss the documents Ms. Dong provided in support of her motion; rather it only referenced specific pages of the presented motion. Indeed, Ms. Dong, in her opening brief to this Court, cites multiple statements in the country conditions evidence she provided with her motion indicating that China engages in repression of non-state religious activities and of political dissidents."). The BIA abused its discretion by not conducting a more fulsome analysis of the evidence.

The Government argues that remand is not necessary because Dong "offered no evidence dating to around 2006, when she was previously in removal proceedings." *Id.* at 11. We reject this argument, however, because the evidence discussed above clearly traces the worsening conditions in China to recent changes made under President Xi's rule, including the 2018 revisions to the Regulations on Religious Affairs.

Accordingly, we conclude that the BIA erred in presenting only a cursory analysis of the evidence in denying Dong's motion to reopen. On remand, the BIA must give full consideration to Dong's evidence before deciding whether Dong has established changed country conditions. And, to the extent that the BIA concludes that Dong has sufficiently shown such changed conditions, the BIA should more fully assess whether Dong has presented a prima facie case of eligibility for asylum, withholding of removal, and CAT relief.

For the foregoing reasons, we GRANT Dong's petition for review, VACATE the BIA's decision, and REMAND for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court